UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| WILFRED T. ADDERLEY, | ) |
| Plaintiff | ) ) ) |
| vs. | ) ) Case No. 5:17-cv-01431-HNJ ) |
| UNITED STATES OF AMERICA, et al., | ) ) |
| Defendants | ) |

## MEMORANDUM OPINION

This action proceeds before the court on the Motion to Dismiss filed by Defendants United States of America; Elaine Duke, in her former, official capacity as Acting Secretary of Homeland Security; and the Transportation Security Administration. (Doc. 19). Defendants seek dismissal of this action pursuant to Rules 12(b)(1) and 12(b)(6), Federal Rules of Civil Procedure. For the reasons set out herein, the court **GRANTS** the Motion to Dismiss.

## STANDARD OF REVIEW

A Federal Rule of Civil Procedure 12(b)(1) motion challenges the court's exercise of subject-matter jurisdiction over a case. A court should grant a Rule 12(b)(1) motion "only if it appears certain that the plaintiff cannot prove any set of facts in support of his" jurisdictional averment. *Harris v. Bd. of Trustees Univ. of Ala.*, 846 F. Supp. 2d 1223, 1232 (N.D. Ala. 2012) (quoting *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001)). The burden of proof on a subject-matter jurisdiction challenge rests upon the

party asserting jurisdiction. *Id.* "A federal court must always dismiss a case upon determining that it lacks subject matter jurisdiction . . . ." *Goodman ex rel. Goodman v. Sipos*, 259 F.3d 1327, 1331 n. 6 (11th Cir. 2001).

A Rule 12(b)(1) motion permits a facial or factual attack. *Willett v. United States*, 24 F.Supp.3d 1167, 1173 (M.D. Ala. 2014) (citing *McElmurray v. Consol. Gov't of Augusta–Richmond Cnty.*, 501 F.3d 1244, 1251 (11th Cir. 2007)). "Facial attacks on the complaint 'require [ ] the court merely to look and see if [the] plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion." *Garcia v. Copenhaver, Bell & Assocs., M.D.'s, P.A.*, 104 F.3d 1256, 1261 (11th Cir. 1997) (quoting *Lawrence v. Dunbar*, 919 F.2d 1525, 1528-29 (11th Cir. 1990)) (other citations omitted). On the other hand, "factual attacks" challenge "the existence of subject matter jurisdiction in fact, irrespective of the pleading, and matters outside the pleadings, such as testimony and affidavits, are considered." *Id.* Hence, the court need not assume the veracity of a complaint's allegations when a party raises a factual challenge to subject-matter jurisdiction, and thus, the court may consider extrinsic evidence such as affidavits. *Odyssey Marine Exploration, Inc. v. Unidentified Shipwrecked Vessel*, 657 F.3d 1159, 1169 (11th Cir. 2011) (citations omitted).

When "a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before

addressing any attack on the merits." *Ramming*, 281 F.3d at 161 (citing *Hitt v. City of Pasadena*, 561 F.2d 606, 608 (5th Cir. 1977));[1] *Harris*, 846 F.Supp.2d at 1230. The party commencing suit in federal court bears the burden of establishing, by a preponderance of the evidence, facts supporting the existence of federal jurisdiction. *Underwriters at Lloyd's, London v. Osting-Schwinn*, 613 F.3d 1079, 1085 (11th Cir. 2010).

Federal Rule of Civil Procedure 8(a)(2) requires that a pleading contain a "short and plain statement of the claim" demonstrating the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2). In conjunction therewith, Federal Rule of Civil Procedure 12(b)(6) permits a court to dismiss a complaint if it fails to state a claim for which relief may be granted. In *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Court revisited the applicable standard governing Rule 12(b)(6) motions to dismiss. First, courts must take note of the elements a plaintiff must plead to state the applicable claims at issue. *Id.* at 675.

After establishing the elements of the claim at issue, the court identifies all well-pleaded, non-conclusory factual allegations in the complaint and assumes their veracity. *Id.* at 679. Well-pleaded factual allegations do not encompass mere "labels and conclusions," legal conclusions, conclusory statements, or formulaic recitations and threadbare recitals of the elements of a cause of action. *Id.* at 678 (citations omitted). In evaluating the sufficiency of a plaintiff's pleadings, the court may draw reasonable

---

[1] All decisions of the former Fifth Circuit handed down prior to September 30, 1981, constitute binding precedent on this Circuit. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981).

3

inferences in plaintiff's favor. *Aldana v. Del Monte Fresh Produce, N.A., Inc.*, 416 F.3d 1242, 1248 (11th Cir. 2005).

Third, a court assesses the complaint's well-pleaded allegations to determine if they state a plausible cause of action based upon the identified claim's elements. *Iqbal*, 556 U.S. at 678. Plausibility ensues "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," and the analysis involves a context-specific task requiring a court "to draw on its judicial experience and common sense." *Id.* at 678, 679 (citations omitted). The plausibility standard does not equate to a "probability requirement," yet it requires more than a "mere possibility of misconduct" or factual statements that are "merely consistent with a defendant's liability." *Id.* at 678, 679 (citations omitted).

## BACKGROUND

Plaintiff Wilfred T. Adderley brought this action against the United States of America, former Acting Secretary of Homeland Security Elaine Duke in her official capacity, and the Transportation Security Administration (TSA). He filed his original complaint on August 22, 2017. (Doc. 1). Adderley filed an amended complaint on September 26, 2017. As this case proceeded, Adderley voluntarily dismissed with prejudice his claims against Officer Young, the TSA officer who performed the search at issue. (Docs. 48 & 49). Finally, Adderley concedes the court should dismiss his FTCA claims against the TSA and Duke. (Doc. 30 at 16).

4

Adderley is a black Bahamian and resident of Nassau, Bahamas. He avers that on August 25, 2013, during travel from Huntsville, Alabama, to Atlanta, Georgia, he traversed a TSA checkpoint with an eight-ounce container of almond milk. A female security officer obtained confirmation from Adderley that he consumes almond milk for medical reasons. However, she informed Adderley he must undergo a pat-down search because the liquid exceeded 3.5 ounces. She directed Adderley to a male security officer (Officer Young) for the search.

Officer Young informed Adderley how he would conduct the search and advised him that during the pat down of Adderley's legs, he would come into contact with Adderley's private area. Adderley objected and requested a private search to remove his pants and dispel any suspicions. Young replied the search constituted standard procedure when a passenger carries liquid in carry-on luggage for medical purposes. Adderley requested to drink the almond milk to avoid a search, yet Young did not honor the request.

Adderley avers he informed Young prior to the search he had pain in his abdomen, lower back, hips, and thighs because of a previous spinal injury. Adderley alleges Young conducted the search in an aggressive manner, touching his genitals and delivering a "karate chop" thereto at the top of each thigh search. Adderley expressed his objection and discomfort; Young replied he performed the search in adherence with procedure.

After the search, Adderley asked for a supervisor, and TSA officer Nicewonder overheard his complaint. Nicewonder stated Officer Young should have granted Adderley's request for a private search, and then advised Adderley about his right to file a formal complaint.

After several communications with TSA personnel regarding the incident, Adderley filed a claim with TSA on August 25, 2015, alleging sexual assault and discrimination against Officer Young and seeking $569,610.74 in damages. By letter dated June 27, 2016, TSA denied Adderley's claim.

Adderley sought reconsideration of the denial on November 23, 2016. On December 29, 2016, TSA sent a letter denying his claim again after reconsideration and advising Adderley he must file suit no later than six months from the mailing date of the consequent reconsideration denial. Adderley avers he did not receive this letter at his address in the Bahamas until February 23, 2017. He filed his Complaint on August 22, 2017, nearly two months after his June 29, 2017, deadline based upon the reconsideration denial's mailing date.

Adderley claims Young violated TSA guidelines by conducting the pat-down search and by not allowing a private search. He further contends Young aggressively conducted the search as if Adderley had committed a suspicious or illegal act, when Adderley had not committed such conduct. He claims Caucasian passengers did not

6

suffer such scrutiny or abuse. Adderley also claims Young violated his personal dignity and physically injured him.

In the Amended Complaint, Adderley asserts claims of race discrimination pursuant to the Fourth and Fourteenth Amendments and the Federal Tort Claims Act (Count I); racial profiling pursuant to the Fourth and Fourteenth Amendments (Count II); willful and malicious torts constituting wrongful conduct pursuant to the Federal Tort Claims Act (Count III); willful, malicious, and unreasonable search and seizure pursuant to the Fourth Amendment (Count IV); malicious and willful use of excessive force (Count V); outrage/intentional infliction of emotional distress (Count VI); and negligence (Count VII).[2] Adderley seeks a declaratory judgment that Defendants' policies, procedures, conditions, and customs violate Adderley's rights under the Fourth[3] and Fourteenth Amendments; a permanent injunction enjoining Defendants and their agents from continuing to violate Adderley's Fourth and Fourteenth Amendment rights; and compensatory and/or nominal damages.

**ANALYSIS**

Defendants seek dismissal of Adderley's complaint for lack of subject matter jurisdiction due to sovereign immunity as to the constitutional torts; failure to timely file

---

[2] The amended complaint also contained claims against Officer Young in his individual capacity for battery (Count VIII) and assault (Count IX). However, because plaintiff dismissed his claims against Officer Young, Counts VIII and IX no longer remain.

[3] The amended complaint refers to "the Court and Fourteenth Amendments" (Doc. 8, ¶ 94); however, the court discerns plaintiff meant to invoke the Fourth Amendment.

his FTCA claim in this court; and failure to state a claim for relief on his constitutional claims. For the reasons set out below, the court finds merit in the motion to dismiss.

I. Sovereign Immunity Bars Adderley's Constitutional Tort Claims

Adderley invokes in Counts I, II, and IV, constitutional tort abridgements of the Fourth and Fourteenth Amendments, in particular race discrimination, racial profiling, and unreasonable search and seizure. Because Adderley dismissed the individual capacity claims against Officer Young, the remaining counts – including the afore-referenced constitutional tort claims – incite claims against the United States itself or its agencies (the TSA and the Department of Homeland Security via suit against Duke in her official capacity as former, Acting Secretary of Homeland Security). In these circumstances, the sovereign immunity doctrine clearly bars Adderley's constitutional tort claims against the United States and its entities.

"[T]he United States may not be sued without its consent and . . . existence of that consent is a prerequisite for jurisdiction." *United States v. Mitchell*, 463 U.S. 206, 2012 (1983). Sovereign immunity, which is jurisdictional in nature, precludes civil liability against the federal government and its agencies absent a congressional waiver. F*ed. Deposit Ins. Corp. v. Meyer*, 510 U.S. 471, 475 (1994). As the Eleventh Circuit clearly delineates:

> Because the government has immunity by default while an officer's [individual capacity] immunity must be affirmatively justified, there are, unsurprisingly, cases where the government is immune but the federal

officer is not. . . .   The government itself . . . remains immune, even if the right allegedly violated by the officer is clearly established. . . .   As a result, the government may be immune from liability for damages for violating a person's constitutional rights, even though the officer-agent is not.

*McMahon v. Presidential Airways, Inc.*, 502 F.3d 1331, 1344–45 (11th Cir. 2007)

Adderley's claims in Counts I, II, and IV clearly invoke the Constitution as their basis.  Based on the foregoing precedent, the United States' sovereign immunity mandates dismissal of Counts I, II, and IV.

Furthermore, Count V does not mention any basis for the excessive force claim. However, such a claim typically arises under the Fourth Amendment.  *See Graham v. Connor*, 490 U.S. 386, 388 (1989); *Manners v. Cannella*, 891 F.3d 959, 973 (11th Cir. 2018). Therefore, sovereign immunity also bars this claim.

## II. The Statute of Limitations and the Intentional Tort Exception Bar Adderley's FTCA Claims

The Federal Tort Claims Act (FTCA) in 28 U.S.C. § 1346(b) provides a limited waiver of sovereign immunity for tort claims.  *Motta ex rel. A.M. v. United States*, 717 F.3d 840, 843 (11th Cir. 2013).  The statute confers on federal district courts exclusive jurisdiction to hear claims against the United States for money damages "caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment."   28 U.S.C. § 1346(b)(1).

Pursuant to the FTCA a "tort claim against the United States shall be forever barred unless it is . . . begun within six months after the date of mailing, by certified or

registered mail, of notice of final denial of the claim by the agency to which it was presented." 28 U.S.C. § 2401(b). In this case, TSA mailed its final notice denying Adderley's FTCA claim on December 29, 2016. Adderley thus secured six months, until June 29, 2017, to file suit on his FTCA claim. Adderley commenced this action on August 22, 2017, nearly two months after the deadline.

Adderley alleges he did not receive the final denial notice until February 23, 2017, which the court accepts as true. Nonetheless, the statute provides six months from the date of mailing, not the date of receipt, for commencement of an action, and courts strictly apply this limitation period. *See Maahs v. United States*, 840 F.2d 863 (11th Cir. 1988); *Carr v. Veterans Admin.*, 522 F.2d 1355, 1357 (5th Cir. 1975); *Owens v. United States*, No. 2:08-CV-1198-VEH, 2009 WL 10703796, at *4-5 (N.D. Ala. Nov. 24, 2009).

Nevertheless, the equitable tolling doctrine applies to the six-month FTCA limitation period. *United States v. Kwai Fun Wong*, 135 S.Ct. 1625, 1632-33 (2015). "As a general matter, equitable tolling pauses the running of, or 'tolls,' a statute of limitations when a litigant has pursued his rights diligently but some extraordinary circumstance prevents him from bringing a timely action." *Lozano v. Montoya Alvarez*, 572 U.S. 1, 134 S. Ct. 1224, 1231–32 (2014) (citing *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005) ("Generally, a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way.")). Equitable tolling arises, for example,

10

when a plaintiff files a defective pleading within a limitations period while actively pursuing judicial remedies, or when an adversary's misconduct induces or tricks a plaintiff into allowing a filing deadline to expire. *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990).

The circumstances in this case do not warrant equitable tolling. Most critically, Adderley did not diligently pursue his claim against the United States. As referenced earlier, even though Adderley purportedly received TSA's December 29, 2016, final denial nearly two months after mailing on February 23, 2017, he still did not file suit until August 22, 2017, nearly two months after his June 29, 2017, deadline. Therefore, Adderley not only failed to file his suit by the June 29, 2017, deadline, he also failed to file it even close to the deadline; he waited nearly two months to do so. These circumstances do not indicate diligence in pursuit of rights, but failure to ascertain the applicable limitations period. Furthermore, the purported delay in receipt occasioned by international mailing does not constitute an "extraordinary circumstance" as such circumstances did not appreciably bar his efforts to file suit. Therefore, the court finds Adderley cannot rely upon equitable tolling to sustain his time-barred FTCA claims.

In addition to the barrier erected by the limitations period, the United States does not waive sovereign immunity as to "[a]ny [FTCA] claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, [and] abuse of process . . . ." 28 U.S.C. § 2680(h). Importantly, § 2680(h)'s intentional torts exception is "not

limited to the torts specifically named therein, but rather encompasses situations where the underlying governmental conduct which constitutes an excepted cause of action is essential to the plaintiff's claim." *O'Ferrell v. United States*, 253 F.3d 1257, 1266 (11th Cir. 2001) (quotation marks omitted).

Therefore, Adderley's intentional tort claims against the United States and its agencies -- excessive force, to the extent Adderley contends the claim is a common law tort rather than a constitutional tort (Count V); outrage/intentional infliction of emotional distress (Count VI); battery (Count VIII); assault (Count IX) -- do not withstand this exception to the FTCA. Clearly, the FTCA expressly bars the assault and battery claims, one fails to discern how a common law excessive force claim differs from a battery claim, and the alleged, underlying battery is essential to Adderley's outrage claim.

### III. Adderley Cannot Obtain Declaratory and Injunctive Relief Against the Federal Entities

Adderley seeks injunctive and declaratory relief against the United States, TSA, and Duke in her official capacity. As an initial matter, the FTCA limits its remedies to monetary relief for aggrieved litigants, so in addition to the other barriers reviewed previously, the statute forecloses this remedy as to its claims. *See* 28 U.S.C. § 1346(b); *Hatahley v. United States*, 351 U.S. 173 (1956) (Federal range agents could not be enjoined as a form of relief under the FTCA)).

As for injunctive relief regarding the constitutional tort claims, the Defendants maintain Adderley does not qualify for injunctive relief because he has not demonstrated a "'sufficient likelihood that he will be affected by the allegedly unlawful conduct in the future.'" *Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323, 1328-29 (11th Cir. 2013) (citation omitted); *see also Strickland v. Alexander*, 772 F.3d 876, 883 (11th Cir. 2014) (a plaintiff seeking prospective injunctive relief must "allege facts from which it appears there is a substantial likelihood that he will suffer injury in the future.")). However, Adderley detailed a subsequent interaction with TSA agents at the same checkpoint, and he filed another administrative complaint about the alleged, aggressive search. (*See* Doc. 30 at 8; Doc. 30-1). Therefore, Adderley may have demonstrated a substantial likelihood of future, unlawful conduct. However, Adderley fails in his entreaty for injunctive relief because he did not plausibly portray such alleged conduct arose from the Defendants at bar.

Although sovereign immunity principles prevent the provision of injunctive relief against the United States, and by extension, its agency TSA,[4] there exists no dispute an aggrieved plaintiff may obtain injunctive relief from federal officials:

> It is true enough that we have long held that federal courts may in some circumstances grant injunctive relief against state officers who are violating, or planning to violate, federal law. . . . But that has been true

---

[4] *Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682, 687-88 (1949) (absent consent, sovereign immunity precludes jurisdiction over suits against the United States).

not only with respect to violations of federal law by state officials, but also with respect to violations of federal law by federal officials. . . . What our cases demonstrate is that, "in a proper case, relief may be given in a court of equity . . . to prevent an injurious act by a public officer." . . .

The ability to sue to enjoin unconstitutional actions by state and federal officers is the creation of courts of equity, and reflects a long history of judicial review of illegal executive action, tracing back to England.

*Armstrong v. Exceptional Child Ctr., Inc.*, 135 S. Ct. 1378, 1384 (2015) (citations omitted).[5]

However, to sustain Adderley's request for injunctive relief the court need conduct a "straightforward inquiry into whether [his] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Verizon Maryland, Inc. v. Pub. Serv. Comm'n of Maryland*, 535 U.S. 635, 645 (2002). And in particular, he must plausibly aver an ongoing violation by the federal officials from whom he seeks injunctive relief. *See Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682, 689-90 (1949) (articulating only two instances in which injunctive relief against a government officer would be appropriate, absent a statutory waiver of sovereign immunity: (1) when the officer acts ultra vires, beyond or counter to her statutory authority, or (2) when she engages in unconstitutional conduct by enforcing an

---

[5] *See also* 14 Fed. Prac. & Proc. Juris. § 3655 (4th ed. 2018) ("The Supreme Court has recognized that a federal court with subject matter jurisdiction may review Government wrongdoing in a lawsuit seeking injunctive or declaratory relief against a federal officer, even when a statute does not authorize such review. Suits under this theory are said to be seeking "nonstatutory review" . . . .) (citing, *inter alia*, *Califano v. Sanders*, 430 U.S. 99, 107 & n.7 (1977) (legislative history to Administrative Procedure Act notes availability of nonstatutory review of agency action); *United States v. Fausto*, 484 U.S. 439, 444 (1988) (Civil Service Reform Act replaced for federal, civil service employees "the various forms of action traditionally used for so-called nonstatutory review of agency action")).

unconstitutional statute or policy); *c.f. Iqbal*, 556 U.S. at 677 ("Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct.").

As portended, Adderley does not satisfy these requirements here. He has not plausibly pleaded any ultra vires acts perpetrated by any federal official remaining in this action, and likewise he has not identified any unconstitutional policy or statute enforced or promulgated by such officials. Rather, Adderley avers that a TSA agent performed an unconstitutional search, and subsequent to filing suit he sought and obtained dismissal of that agent. In these circumstances, Adderley cannot obtain injunctive relief against other federal officials regarding whom he has not averred any ongoing violations with well-pleaded facts.

The same result manifests for Adderley's request for declaratory relief. The Declaratory Judgment Act provides that in the "case of [an] actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201. An "actual controversy" exists where there is "a substantial continuing controversy between parties having adverse legal interests." *Emory v. Peeler*, 756 F.2d 1547, 1552 (11th Cir. 1985). Moreover, "the continuing controversy may not be conjectural, hypothetical, or contingent; it must be real and immediate, and create a definite, rather

15

than speculative threat of future injury." *Malowney v. Fed. Collection Deposit Grp.*, 193 F.3d 1342, 1347 (11th Cir. 1999) (quotation omitted). "The remote possibility that a future injury may happen is not sufficient to satisfy the 'actual controversy' requirement for declaratory judgments." *Id.* (quotation omitted). A district court maintains discretion "whether and when to entertain an action under the Declaratory Judgment Act." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 282 (1995).

Pursuant to the foregoing standards, Adderley may not obtain declaratory relief from the remaining Defendants. There exists no actual controversy between Adderley and the Defendants because there exists no substantial continuing controversy between them demonstrating a speculative threat of future injury. Adderley has not plausibly averred, with well-pleaded facts, any continuing, unconstitutional violation by the Defendants, and thus, his entreaty fails in this regard as well.

## CONCLUSION

Based on the foregoing analysis, the court **GRANTS** the motion to dismiss and **DISMISSES** this action **WITH PREJUDICE**. The court will enter a separate order in conformity with this Memorandum Opinion.

**DONE** this 10th day of August, 2018.

_____
HERMAN N. JOHNSON, JR.
UNITED STATES MAGISTRATE JUDGE